## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAREN KENNEY, on behalf of herself and all others similarly situated,<br><br>                         Plaintiff,<br><br>v.<br><br>ALLURA USA LLC, PLYCEM USA LLC D/B/A ALLURA, PLYCEM USA, INC., ELEMENTIA USA, INC., ELEMENTIA, S.A.B. DE C.V.,<br><br>                         Defendants. | CASE NO.: 5:19-cv-1226 (TJM/TWD)<br><br>**CLASS ACTION COMPLAINT**<br>(JURY TRIAL DEMANDED) |

Plaintiff Karen Kenney, on behalf of herself and others similarly situated, by and through their undersigned counsel, files this Class Action Complaint and alleges as follows:

### NATURE OF THE ACTION

1.      This is a consumer class action involving faulty fiber cement siding ("Siding") against the manufacturer Defendants.

2.      The Siding suffers from a latent defect which makes the Siding prone to cracking, splitting, peeling and/or flaking.

3.      Defendants advertise the Siding as, among other things, durable, engineered to endure harsh weather and high wind climates, as well as the best return on investment for homeowners.

4.      However, in only a few years, the Siding regularly starts to crack and deteriorate.

1

5.       As a result of this defect, Plaintiff and members of the Class have incurred and will incur thousands of dollars in damages to replace the Siding as well as to repair damage to the property due to cracking and splitting since the Siding does not perform adequately.

## THE PARTIES

6.       Plaintiff Karen Kenney is a resident of Jamesville, New York, in Onondaga County.

7.       In making her purchase decision, Ms. Kenney read and relied on the representations in Defendants' brochure that made the following statements, or statements of similar meaning:

- The Siding Combines the appearance and workability of wood with the durability of specially formulated fiber cement, Allura Lap Siding not only looks great but lasts considerably longer than traditional exterior wall cladding or vinyl siding.

- The Siding is "free from manufacturing defects.  They are also suitable in both hot and cold climates…"

- The Siding is durable, engineered to endure harsh weather & high wind climates.

- The Siding won't rot, warp or splinter and is designed to significantly outperform wood in every way.

8.       The brochure also stated that the Siding came with a "50 Year Warranty."  Ms. Kenney also saw the 50 Year Warranty on the sample board she was provided by the contractor.

9.       Ms. Kenney purchased Plycem/Allura cedar siding in October 2014.

10.       Ms. Kenney has suffered monetary damage from purchasing the Siding, from diminution of value of her home, and from future costs of replacing the Siding on the home.

11.       Had Ms. Kenney known that the representations concerning the Siding were false, she would not have purchased it or would not have paid as much as she did for it.

12.       Defendant Allura USA LLC is a subsidiary of Plycem USA LLC, and Plycem USA, Inc., with a principal place of business in the State of Texas, and at all times relevant herein, Allura USA LLC transacted and conducted business in New York.

13.       Specifically, Allura USA LLC manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiff's home and those of thousands of Class Members in

New York and the United States.

14.      Defendant Plycem USA LLC d/b/a Allura was and is a corporation organized  and existing under the laws of the State of Delaware, with a principal place of business in the State of Texas, and all times relevant herein, Plycem USA LLC d/b/a Allura transacted and conducted business in New York.

15.      Plycem USA LLC d/b/a Allura manufactured, advertised, and sold defective Siding that was installed on Plaintiff's home and those of thousands of Class Members in New York and the United States.

16.      Defendant Plycem USA Inc. was and is a corporation organized and existing under the laws of the State of Georgia, with a principal place of business in the State of Texas and all times relevant herein, Plycem USA Inc. transacted and conducted business in New York.

17.      Plycem USA Inc. manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiff's home and those of thousands of Class Members in New York and the United States.

18.      Defendant Elementia USA, Inc., is a corporation organized and existing under  the laws of the State of Delaware, with a principal place of business in the State of Texas, and all times relevant herein, Elementia USA, Inc. transacted and conducted business in New York.

19.      Elementia USA, Inc. manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiff's home and those of thousands of Class Members in New York and the United States.

20.      Defendant Elementia, S.A.B. De C.V. was and is a corporation organized and existing under the laws of Mexico and at all times relevant herein, Elementia, S.A.B. De C.V. conducts and is engaged in business in the State of New York.

21.      Elementia, S.A.B. De C.V. manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiff's home and those of thousands of Class Members in

New York and the United States.

22.    At all times relevant herein, Elementia, S.A. De C.V., Elementia USA, Inc.,

Plycem USA LLC, Plycem USA Inc., and Allura USA LLC jointly transacted and conducted

business in New York.

23.    The Defendants are the agents and/or alter egos of each other, and the corporate

interests of these Defendants were combined so that they effectively operated as one and the same

entity.

24.    Defendants combined their resources to design, develop, manufacture, market, and

sell the Siding.

## JURISDICTION AND VENUE

25.    This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §1332(d)(2) and the Class Action Fairness Act, in that (i) this is a class action involving more

than 100 class members; (ii) plaintiff Ms. Kenney is a citizen of the state of New York, and

Defendants are residents of Delaware, Texas, Georgia and Mexico; and (iii) the amount in

controversy exceeds $5,000,000.00 exclusive of interests and costs.

26.    Defendants conduct and transact business in this District, and are subject to

personal jurisdiction in this District.

27.    Venue is proper in this District, pursuant to 28 U.S.C. §1391, because Plaintiff

resides in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims

occurred in this District.

## SUBSTANTIVE ALLEGATIONS

28.    Defendants are designers, manufacturers and sellers of fiber cement siding, including

the Plycem/Allura cedar siding that Ms. Kenney purchased.

29.    Defendants represent that they would guarantee the Siding for 50 years.

30.    At all times material hereto, Defendants made the following statements, or statements

of similar meaning:

> • Combining the appearance and workability of wood with the durability of specially formulated fiber cement, Allura Lap Siding not only looks great but lasts considerably longer than traditional exterior wall cladding or vinyl siding.
>
> • Unlike wood, vinyl and other traditional building materials, Allura Fiber Cement products resist damage from hail or termite attacks, resist rot, are non-combustible, and free from manufacturing defects. They are also suitable in both hot and cold climates and are fire resistant. What's more, Allura products feature realistic wood grain and textures, come in an incredible array of colors and are paintable for unlimited design possibilities.
>
> • "When it comes to the natural look you want with none of the hassles, Allura Fiber Cement products are all you need. • Durable, engineered to endure harsh weather & high wind climates • Non-combustible, Class A fire rating • Superior aesthetics • Factory Pre-Primed • Distinctive, more realistic textures • Best ROI for homeowners* for 8 years in a row."
>
> • "It won't rot, warp or splinter and is designed to significantly outperform wood in every way."

31.     However, the Siding does not perform as promised, prematurely fails, damages the buildings and lowers the value of the property.

32.     As a result of the defects and failures alleged herein, Plaintiff and the Class have suffered actual damages.

33.     Defendants knew or reasonably should have known the Siding is defective as designed  and manufactured such that the product fails prematurely.

34.     At all relevant times, Defendants had a duty to disclose to Plaintiff and Class Members that the Siding was defective and prone to failure.

35.     Because the defects in the Siding are latent and not detectable at the time of purchase until manifestation, Plaintiff and the Class Members were not reasonably able to discover their Siding was defective even in the exercise of due diligence.

36.     Plaintiff seeks to recover, for herself and for the Class, the costs of repairing the damage to their property and replacing their Siding, and injunctive relief requiring Defendants to replace their defective Siding.

## CLASS ACTION ALLEGATIONS

37.    Plaintiff brings this class action pursuant to Fed. R. Civ. P., Rule 23 on behalf of herself and a Class defined as all persons and entities that own structures within the United States in which Defendants' Siding is installed.

38.    The Class is so numerous that individual joinder of all Class members is impracticable. The actual number of Class members is unknown at this time, but numbers in the thousands.

39.    There are numerous questions of law and fact that are common to Plaintiff and the Class that are susceptible to common answers by way of common proof and that predominate over any questions that may affect individual Class members, including, without limitation:

a. Whether Defendants' Siding is defective as described herein;

b. Whether Defendants' Siding was defectively designed and/or defectively manufactured;

c. Whether Defendants' Siding was fit for its intended purpose;

d. Whether Defendants' Siding was merchantable;

e. Whether Defendants knew or should have known of the defect in the Siding before the Siding was placed on the market;

f. Whether Defendants' representations as described herein were false or misleading to a reasonable consumer;

g. Whether the Siding failed to perform as advertised, marketed and warranted;

h. Whether Defendants breached the terms of their express warranties;

i. Whether Plaintiff and the Class are entitled to relief under Defendants' express warranties;

j. Whether Defendants breached their implied warranties to Plaintiff and the Class by advertising, marketing and selling Siding that were not of a merchantable quality, nor

fit for the ordinary purpose for which they were sold;

k. Whether Plaintiff and the Class are entitled to monetary damages, and the amount of such damages; and

l. The appropriate nature of class-wide equitable relief.

40.    Plaintiff's claims are typical of the claims of the Class because Plaintiff and all members of the Class own Siding and have been damaged by the same misrepresentations.

41.    Plaintiff will fairly and adequately represent the interests of the Class members and does not have interests adverse to the Class. Plaintiff is committed to pursuing this action and has retained competent counsel experienced in the prosecution of consumer class actions. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class, and have the financial resources to do so.

42.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to the Class as a whole. The members of the Class are entitled to injunctive relief as set forth herein.

43.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Most individual members of the Class are not likely to prosecute separate actions given the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of damages at issue for most individual Class members. This action poses no special problems in management of this case as a class action.

44.    The Class is ascertainable and identifiable from Defendants' and contractors' records.

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**
**(On Behalf of Plaintiff and the New York Subclass)**

45.    Plaintiff incorporates by reference each preceding paragraph as though fully set

forth herein.

46.    Plaintiff brings this claim on behalf of Class Members who purchased the Siding in the State of New York (the "New York Subclass").

47.    Plaintiff and the New York Subclass members and all Defendants are "persons" under N.Y. Gen. Bus. Law § 349(h).

48.    Defendants' actions as set forth herein occurred in the conduct of trade or commerce under the GBL § 349.

49.    GBL § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

50.    Defendants' conduct, as set forth herein, constitutes deceptive acts or practices under this section because they (1) represented the Siding had characteristics, uses, benefits, and qualities which it did not have; (2) represented that the Siding was of a particular standard, quality, and grade when it was not; (3) advertised the Siding with the intent not to sell it as advertised; (4) failed to disclose information concerning the Siding with the intent to induce consumers to purchase the Siding.

51.    Defendants' unfair or deceptive acts or practices were likely to and did in fact reasonable consumers, including Plaintiff and the New York Subclass members, about the characteristics of the Siding.

52.    Plaintiff and the New York Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information.  Had they known the truth, Plaintiff and the New York Class members would not have purchased the Siding or would have paid less for it.

53.    As a result of the foregoing willful, knowing, and wrongful conduct of Defendants, Plaintiff and the New York Subclass have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to actual damages or $50, whichever is greater, treble damages up to $1,000, punitive damages to the extent available under the law,

reasonable attorneys' fees and costs, an order enjoining Defendants' deceptive and unfair

conduct, and all other just and appropriate relief available under the GBL§ 349.

<u>**SECOND CAUSE OF ACTION**</u>
<u>**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350**</u>
<u>**(On Behalf of Plaintiff and the New York Subclass)**</u>

54.     Plaintiff incorporates by reference each preceding paragraph as though fully set

forth herein.

55.     Plaintiff brings this claim on behalf of the New York Subclass.

56.     Defendants were engaged in the "conduct of business, trade or commerce," within

the meaning of N.Y. Gen. Bus. Law § 350, the New York False Advertising Act.

57.     GBL § 350 makes unlawful "[f]alse advertising in the conduct of any business,

trade or commerce.

58.     False advertising includes "advertising, including labeling, of a commodity . . . if such

advertising is misleading in a material respect," taking into account "the extent to which the

advertising fails to reveal facts material in light of … representations [made] with respect to the

commodity …." GBL § 350-a.

59.     Defendants caused to be made or disseminated through New York, through advertising,

marketing, and other publications, statements and omissions that were untrue or misleading, and that

were known by Defendants, or that through the exercise of reasonable care, should have been known

by Defendants to be untrue and misleading to Plaintiff and the New York Subclass.

60.     Defendants made material misrepresentations and omissions of fact with intent to

mislead and deceive concerning the Siding, particularly concerning durability and functional life of the

Siding.

61.     The misrepresentations and omissions regarding the Siding were material and

likely to deceive a reasonable consumer.

62.     Defendants intentionally and knowingly misrepresented material facts regarding

the Siding with intent to mislead Plaintiff and the New York Subclass.

63.     Defendants' violations of GBL§ 350 present a continuing risk to Plaintiff and to the general public. Defendants' deceptive acts and practices affect the public interest.

64.     Plaintiff and the New York Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information. Plaintiff and the New York Class members who bought the Siding would not have purchased the Siding if they had known the truth or would have paid less for it.

65.     As a result of the foregoing willful, knowing, and wrongful conduct of Defendants, Plaintiff and the New York Subclass have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to, actual damages in an amount to be determined at trial and statutory damages in the amount of $500 for each Subclass member, treble damages up to $10,000 for Defendants' intentional conduct, punitive damages to the extent available under law, reasonable attorneys' fees and costs, an order enjoining Defendants' deceptive and unfair conduct, and all other just and appropriate relief available under GBL§ 350.

## THIRD CAUSE OF ACTION
## STRICT LIABILITY-DESIGN AND MANUFACTURING DEFECT
### (On Behalf of Plaintiff and the Class)

66.     Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

67.     Defendants are the designers, manufacturers, distributers, marketers, promoters, suppliers and sellers of the Siding.

68.     The Siding was defective and unreasonably dangerous when put to its reasonably anticipated use insofar as it failed and caused the property damage described herein.

69.     The unreasonably dangerous defect existed when the Siding was designed, manufactured, fabricated, produced, assembled, and distributed by Defendants

70.    The Siding was expected to and did reach consumers, including, Plaintiff without substantial change in the conditions in which it was designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied and otherwise released into the stream of commerce.

71.    Plaintiff was unaware of the hazards and defects associated with the Siding and used the product in a manner that was intended by Defendants.

72.    Defendants are strictly liable to Plaintiff for designing, manufacturing, and placing into the stream of commerce a product which was unreasonably dangerous for their reasonably foreseeable uses at the time they left the control of Defendants because of design and/or manufacturing defects.

73.    Defendants knew or should have known of the dangers associated with the use of the Siding and the defective nature of that product but continued to design, manufacture and sell the Siding in disregard of the known risk of harm to property.

74.    As a direct and proximate cause of the design defect and Defendants' misconduct, Plaintiff and other class members suffered damages.

### FOURTH CAUSE OF ACTION
### STRICT LIABILITY-FAILURE TO WARN
### (On Behalf of Plaintiff and the Class)

75.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

76.    Defendants were under a duty to provide adequate warnings of any dangers known or which should have been known regarding the Siding, including the proclivity of the Siding to crack, split and cause property damage.

77.    Defendants failed to provide adequate warnings.  The Siding was defective and unreasonably dangerous when put to a reasonably anticipated use in that Defendants failed to include adequate warnings about the proclivity of the Siding to crack, split and cause property damage.

78.    The defective and unreasonably dangerous condition existed when the Siding was designed, manufactured, distributed, marketed, promoted, supplied and sold and otherwise released by Defendants into the stream of commerce.

79.    As a direct and proximate cause of the design defect and Defendants' misconduct, Plaintiff and other class members suffered damages.

**FIFTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and the Class)**

80.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

81.    The Siding contain an express warranty with every purchase.

82.    As described herein, Defendants warranted that the Siding was "durable", "lasts considerably longer than traditional exterior wall cladding or vinyl siding", "free from manufacturing defects", "suitable in both hot and cold climates", "engineered to endure harsh weather and high wind climates" and that it "won't rot, warp or splinter and is designed to significantly outperform wood in every way." These statements became part of the basis of the transaction between Plaintiff and the members of the Class, and Defendants.

83.    Defendants' express warranty states that its Siding will be free from defects in materials for 50 years, and workmanship for 10 years.

84.    Defendants expressly warrants that if the Siding is defective, Defendants will replace it free of charge.

85.    Plaintiff complied with the terms of Defendants' express warranty but Defendants have failed to replace the Siding.

86.    Plaintiff has also notified Defendants of the defect in the Siding.

87.    As a result of Defendants' conduct, Plaintiff and Class members have suffered an ascertainable loss in the form of direct monetary loss.

**SIXTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of Plaintiff and the Class)**

88.    Plaintiff realleges and incorporates by reference each preceding paragraphs as though fully set forth herein.

89.    An implied warranty of merchantability accompanies the sale of the Siding.

90.    The Siding was unfit for its intended use and it was not of merchantable quality, because it was defective and prone to cracking and splitting during normal use.

91.    As a direct and proximate result of the breach of the implied warranties, Plaintiff and the Class members suffered and will continue to suffer loss as alleged herein in an amount to be determined at trial.

92.    Plaintiff has provided notice to Defendants concerning the problems with the Siding.

93.    Plaintiff and the Class have incurred damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(On Behalf of Plaintiff and the Class)**

94.    Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

95.    Defendants, through their marketing materials, made representations to Plaintiff and Class Members, about the superior quality and durability of their Siding.

96.    Defendants failed to disclose the defective condition of their Siding, including the substantial likelihood of cracking and splitting that would or could likely result from the Siding defects.

97.    Defendants breached their duties by failing to exercise due care in making the above-described representations and non-disclosures.

98.    Plaintiff and the members of the Class have suffered monetary loss as a direct and proximate result of Defendants' representations and non-disclosures.

## EIGHTH CAUSE OF ACTION
## NEGLIGENCE
## (On Behalf of Plaintiff and the Class)

99.     Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

100.    Defendants had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, and marketing of the Siding.

101.    Defendants breached their duty to Plaintiff and the Class by designing, manufacturing, advertising and selling a product that is defective and will fail prematurely, and by failing to promptly remove the Siding from the marketplace or to take other appropriate remedial action.

102.    Defendants knew or should have known that the Siding was defective, would fail prematurely, was not suitable for use as an exterior siding product, and otherwise was not as represented by Defendants.

103.    As a direct and proximate cause of Defendants' negligence, Plaintiff and the Class have suffered actual damages in that the Siding was purchased Plaintiff and the Class Members.

104.    Plaintiff and the Class have incurred damages in an amount to be proven at the trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf and herself and similarly-situated consumers, prays for judgment as follows:

1.     Certifying the Class under Fed. R. Civ. P., Rule 23, appointing Plaintiff as the representative of the Class, and appointing the law firms representing Plaintiff as counsel for the Class;

2.     Entering preliminary and permanent injunctive relief against Defendants, including notifying Class Members of the defects in the Siding;

3.     Awarding monetary, compensatory, statutory and punitive damages;

14

4.        Awarding attorneys' fees and costs;

5.        Awarding pre-judgment and post-judgment interest;

6.        Granting Plaintiff and the Class leave to amend the Complaint to conform to the

evidence produced at trial; and

7.        Granting such other or further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

        Plaintiff hereby demands a trial by jury on all claims so triable.

                                        **THE SULTZER LAW GROUP P.C.**

                                        */s/ Adam Gonnelli_____*
                                        Jason P. Sultzer, Esq.
                                        Joseph Lipari, Esq.
                                        Adam Gonnelli, Esq.
                                        85 Civic Center Plaza, Suite 200
                                        Poughkeepsie, NY 12601
                                        Telephone:  845-483-7100
                                        Email:  gonnellia@thesultzerlawgroup.com


                                        **GATTUSO & CIOTOLI, PLLC**

                                        */s/ Frank S. Gattuso_____*
                                        Frank S. Gattuso, Esq.
                                        9 Landgrove Drive
                                        Fayetteville, NY 13066
                                        Telephone:  315-400-5958
                                        Email:  frankgattuso14@gmail.com


                                        ***Attorneys for Plaintiff***